IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Michael A. Carr, | : | |
| | : | |
| Appellant | : | |
| | : | |
| v. | : No. 658 C.D. 2022 | |
| | : Submitted: November 6, 2023 | |
| Township of Falls and International | : | |
| Union of Operating Engineers | : | |
| Local 542 | : | |

BEFORE:     HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED:  December 18, 2023

Michael A. Carr (Employee) appeals the order of the Bucks County Court of Common Pleas (trial court) granting the renewed Motion for Summary Judgment filed by the Township of Falls (Township) and entering judgment in the Township's favor and against Employee with respect to Employee's three-count Complaint against the Township.  We affirm.

The Joint Stipulated Facts of the parties may be summarized as follows. *See* Reproduced Record (R.R.) at 43a-46a.  On January 23, 2008, Employee began his employment in the Township's Department of Public Works (DPW) as a full-time laborer.  He eventually moved up to the position of Operator Class 1 and was later promoted to Operator Class 2.  As an Operator Class 2, Employee had a

commercial driver's license (CDL) and was qualified to operate one or more trucks, motor vehicles, and yard and heavy equipment. Employee was also a member of the International Union of Operating Engineers Local 542 (Union).

On November 20, 2017, Employee was involved in a minor accident while driving a DPW truck at the Township's landfill. In accordance with Township policy, Employee was sent for a post-accident drug and alcohol test at WorkPlace Health. On November 27, 2017, the Township received the results of the drug and alcohol screening that Employee had tested positive for the presence of marijuana. Based on the positive test result, Employee received an eight-day suspension without pay.[1] Specifically, the November 30, 2017 letter from the Township's Manager that was hand delivered to Employee stated, in relevant part:

---

[1] Article 34 of the parties' Collective Bargaining Agreement (CBA) states, in relevant part:

> ***The use or possession of . . . marijuana . . . by employees while on duty or on the work site is prohibited. Employees must not report for work under the influence of . . . marijuana . . . . Violations of these rules will be ground[s] for disciplinary action.***

> An employee will be required to submit blood, urine, or other diagnostic tests to detect . . . drugs (or drug metabolites) in his/her system whenever an employee is involved in an on-the-job accident which result[s] in more than $200 in damages to property or equipment or a reasonable suspicion of drug . . . use[] as determined by the [DPW D]irector . . . .

> Reasonable suspicion may be based on an on-the-job accident . . . .

> If an initial screening test indicates positive findings, a confirmatory test, using gas chromatography or mass spectrometry, will be conducted and screening performed by a laboratory for the presence of drugs or alcohol. If an employee's test is positive, the employee will be required to complete a drug rehabilitation program

**(Footnote continued on next page…)**

2

Based on the results of your drug and alcohol screening, you are suspended for 8 days without pay. In addition, you must participate in an evaluation by a Substance Abuse Professional (SAP) and successfully complete any education, counseling or treatment prescribed by the SAP prior to returning to work. The Township must receive a report from the SAP that you have successfully complied with the SAP's recommendation, and you must provide a negative return-to-duty drug test, at your expense, prior to your return to work. After you return to work, you will be subject to random testing for drugs and/or alcohol at least 6 times during the next 12 months, *and depending on the*

---

prior to his or her return to work. . . . Employees on probation as a result of prior violations of the drug and alcohol policy will be subject to random testing during the course of the probationary period.

Any employee found to have a blood-alcohol concentration of .02% or more . . . while on the work site or performing official duties, shall receive a five (5)[-]day suspension without pay on the first offense and shall be required to participate in a drug rehabilitation program. In addition, the employee shall be placed on probation for twelve (12) months and shall be subject to random drug and alcohol testing for the period. . . .

An employee found to have a detectable concentration of any drug other than marijuana or alcohol in his or her system . . . shall receive a ten (10)[-]day suspension without pay on the first offense and shall be required to participate in a drug rehabilitation program. In addition, the employee shall be placed on probation for twenty-four (24) months and shall be subject to random drug and alcohol testing for that period. . . .

Employees who take . . . prescribed medication are responsible for being aware of any effect the medication may have on the performance of their duties and must promptly report to the supervisors the use of medication likely to impair their ability to do their job. Any employee who fails to do so shall be subject to disciplinary action up to and including discharge.

R.R. at 87a-88a.

3

> *evaluation of the SAP, could be subject to this testing for a longer period of time*.

Trial Court Exhibit (Trial Ct. Ex.) I, Original Record (O.R.) at 264 (emphasis added).[2] During his deposition, Employee admitted receiving this letter from the Township. Trial Ct. Ex. D, O.R. at 67-68.[3]

Under federal Department of Transportation (DOT) regulations, before returning to work, Employee was also required to submit to an evaluation by an SAP and successfully complete education, counseling, or treatment prescribed by the SAP.[4] The Township also required a report by the SAP. On December 18, 2017,

---

[2] Because the Trial Court Exhibits in the Original Record were filed electronically and have a number of forms of pagination, the page numbers referenced in this memorandum opinion reflect the electronic pagination.

[3] As the trial court noted:

> Under the [rule announced in *Nanty-Glo Borough v. American Surety Co.*, 163 A. 523 (Pa. 1932) (*Nanty-Glo*)], the party moving for summary judgment may not rely upon its own testimony or affidavits, or those of its witnesses, to establish the nonexistence of genuine issues of material fact, since the credibility of those submissions is reserved for the factfinder. *HSBC Bank, N.A. v. Donaghy*, 101 A.3d 129, 134 n.10 (Pa. Super. 2014). However, *Nanty-Glo* "does not preclude the grant of summary judgment when the moving party relies on the testimonial evidence of an adverse party." *Id.*

R.R. at 239a n.2.

[4] Section 40.307(a)-(e) of Title 49 of the Code of Federal Regulations (C.F.R.), entitled "What is the SAP's function in prescribing the employee's follow-up tests?," specifically provides:

> (a) As a[n] SAP, for each employee who has committed a DOT drug or alcohol regulation violation, and who seeks to resume the performance of safety-sensitive functions, you must establish a written follow-up testing plan. You do not establish this plan until

**(Footnote continued on next page…)**

4

after you determine that the employee has successfully complied with your recommendations for education and/or treatment.

(b) You must present a copy of this plan directly to the [designated employer representative (DER)].

(c) You are the sole determiner of the number and frequency of follow-up tests and whether these tests will be for drugs, alcohol, or both, unless otherwise directed by the appropriate DOT agency regulation. . . .

(d) However, *you must, at a minimum, direct that the employee be subject to six unannounced follow-up tests in the first 12 months of safety-sensitive duty following the employee's return to safety-sensitive functions*.

> (1) You may require a greater number of follow-up tests during the first 12-month period of safety sensitive duty . . . .
>
> (2) *You may also require follow-up tests during the 48 months of safety-sensitive duty following this first 12-month period*.
>
> (3) *You are not to establish the actual dates for the follow-up tests you prescribe. The decision on specific dates to test is the employer's*.
>
> (4) As the employer, you must not impose additional testing requirements (*e.g.*, under company authority) on the employee that go beyond the SAP's follow-up testing plan.

(e) The requirements of the SAP's follow-up testing plan "follow the employee" to subsequent employers or through breaks in service.

49 C.F.R. §40.307(a)-(e) (emphasis added).

In turn, Section 40.309(a)-(d) outlines the Township's duties as an employer, stating:

**(Footnote continued on next page…)**

5

Steven Garnham (Garnham) assessed and evaluated Employee.[5] Garnham recommended that Employee complete four hours of drug/alcohol education with a follow-up evaluation after completing this requirement.

On December 29, 2017, Garnham wrote to the Township that Employee had completed his evaluation and four hours of education with John Rooney, M.S., on December 26 and 27, 2017. *See* R.R. at 60a. Garnham wrote on the first page of

---

(a) *As the employer, you must carry out the SAP's follow-up testing requirements. You may not allow the employee to continue to perform safety-sensitive functions unless follow-up testing is conducted as directed by the SAP*.

(b) *You should schedule follow-up tests on dates of your own choosing, but you must ensure that the tests are unannounced with no discernable pattern as to their timing, and that the employee is given no advance notice*.

(c) You cannot substitute any other tests (e.g., those carried out under the random testing program) conducted on the employee for this follow-up testing requirement.

(d) You cannot count a follow-up test that has been cancelled as a completed test. A cancelled follow-up test must be recollected.

49 C.F.R. §40.309(a)-(d) (emphasis added).

[5] Section 40.295(a)-(b) of Title 49 of the C.F.R. specifically prohibits a second SAP evaluation stating, in relevant part:

(a) As an employee with a DOT drug and alcohol regulation violation, when you have been evaluated by a[n] SAP, you must not seek a second SAP's evaluation in order to obtain another recommendation.

(b) As an employer, you must not seek a second SAP's evaluation if the employee has already been evaluated by a qualified SAP.

49 C.F.R. §40.295(a)-(b).

the letter that "[t]here are no aftercare recommendation[s]" and a "testing schedule [was] on the second page" of the letter. *Id.* On the second page of the letter, Garnham stated: "I recommend that [E]mployee be tested 6 times for drugs and alcohol per year for the first year ***and 6 times for drugs in the second year following his return to duty***." *Id.* at 61a (emphasis added).

On or about January 8, 2018, Township Manager Peter Gray (Manager) called Employee at his home to discuss his return to work. Employee returned to work on January 12, 2018. Manager did not release Garnham's SAP report to Employee. Employee's probationary period for follow-up drug and alcohol testing started on January 12, 2018.

On May 29, 2019, at 6:10 a.m., DPW's Director, Jason Lawson (Director), handed Employee an envelope in front of his co-workers containing paperwork for him to report for a drug test the same day.[6] The drug test requested on May 29, 2019, was not a random drug test. Rather, the May 29, 2019 drug test was a follow-up drug test for Employee's return-to-work testing in connection with the November 20, 2017 accident. That same day, Director wrote a memorandum to

---

[6] Section 382.211 of Title 49 of the C.F.R. states, in relevant part: "***No driver shall refuse to submit to . . . a follow-up alcohol or controlled substance test required under §382.311. No employer shall permit a driver who refuses to submit to such tests to perform or continue to perform safety-sensitive functions***." 49 C.F.R. §382.211 (emphasis added); *see also* Section 40.191(a)(1), 49 C.F.R. §40.191(a)(1) ("***As an employee, you have refused to take a drug test if you . . . [f]ail to appear for any test . . . within a reasonable time, as determined by the employer, consistent with applicable DOT agency regulations, after being directed to do so by the employer***.") (emphasis added). In turn, Section 382.311 states: "The requirements for follow-up testing must be performed in accordance with 49 [C.F.R.] part 40, subpart O." 49 C.F.R. §382.311. Thus, this section specifically incorporates the testing requirements imposed by the SAP under Section 40.307 outlined above, and the random testing requirements required to be performed by the Township under Section 40.309, also outlined above, and specifically provides that a refusal precludes the Township from permitting Employee to perform the duties of his position.

Manager recommending that Employee be immediately terminated for leaving work without submitting to the requested drug test.

As outlined above, under the DOT regulations, an SAP report is required before an employee returns to work, and the employee must complete the SAP process required by the Township. The SAP report herein complied with the DOT regulations for the number and frequency of the testing without stating the actual test dates, which are set by the Township. The SAP report recommended that Employee be tested six times for drugs and alcohol in the first year after he returned to work and six times for drugs in the second year after his return.

On June 3, 2019, the Township gave Employee a letter notifying him of a *Loudermill*[7] hearing to be conducted prior to his termination. In the letter, the Manager referenced two provisions in the Township's Employee Handbook, Township Policy 701 (Employee Conduct),[8] and Township Policy 710 (Drug and

---

[7] Referring to *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), which requires that a union member be given notice and an opportunity to respond to any charges levied against him in a formal hearing before being terminated.

[8] Township Policy 701 states, in pertinent part:

> To ensure orderly operations and provide the best possible work environment, [the] Township expects employees to follow rules of conduct that will protect the interests and safety of all employees and the organization.

> It is not possible to list all the forms of behavior that are considered unacceptable in the workplace. The following are examples of infractions of rules of conduct that may result in disciplinary action, up to and including termination of employment:

> * * *

**(Footnote continued on next page…)**

8

Alcohol Testing),[9] as well as Article 34 of the CBA, the requirements of his prior discipline, and the relevant DOT regulations.

---

- Working under the influence of alcohol or illegal drugs[; and]

- Possession . . . or use of alcohol or illegal drugs in the workplace, while on duty, or while operating employer-owned vehicles or equipment[.]

R.R. at 96a.

[9] Township Policy 710 states, in relevant part:

To help ensure a safe and healthy working environment, . . . employees may be asked to provide body substance samples (such as urine and/or blood) randomly once per year to determine the illicit or illegal use of drugs and alcohol.

In particular, employees who are required to drive or utilize heavy or dangerous equipment as part of their job are subject to random drug and/or alcohol testing.

If the Township has a reasonable basis to conclude that an on-duty employee is under the influence of alcohol or illegal drugs, the Township has the right to require the employee to undergo drug and/or alcohol testing.

Further, any employee who is required to drive or utilize heavy or dangerous equipment as part of his or her job and who is involved in an accident, will be subject to immediate drug and/or alcohol testing and will be placed in an administrative leave status pending the results of such testing.

***Refusal to submit to drug and/or alcohol testing may result in disciplinary action, up to and including termination of employment***.

R.R. at 99a (emphasis added).

9

On June 10, 2019, Employee appeared at the *Loudermill* hearing with a Union representative. On June 12, 2019, the Township terminated Employee's employment, referencing the same provisions and policies as cited in the Manager's June 3, 2019 letter.

On June 13, 2019, the Union filed a Step One grievance for Employee's termination, claiming wrongful termination, with the requested remedy of bringing him back to work. On June 17, 2019, the Township's Director denied the grievance. On June 18, 2019, the Union notified the Township that it would proceed to a Step Two grievance. On June 24, 2019, Employee attended the grievance meeting with a Union representative. On July 1, 2019, the Township's Manager denied the grievance. The Union did not pursue any further remedy on Employee's behalf after the Township denied the Step Two grievance.[10]

Employee commenced the instant action by writ of summons on September 15, 2019.[11] Following a period of pre-complaint discovery, on January 20, 2020, Employee filed the instant three-count Complaint asserting the following

---

[10] Specifically, the Union's counsel sent Employee a letter on July 3, 2019, explaining why it would not pursue Step Three grievance arbitration on his behalf:

> The reasons for this decision, while you may disagree with them, is the fact that you were instructed to take a drug test and you refused to take that test. I understand that you do not believe you are under any compulsion to take the test[,] but your refusal leaves us with the decision that we would not be able to prevail at arbitration. I understand that you believe that your probation in this matter ended. The Union believes that this does not excuse your decision to refuse to take the test. The Union wishes you good luck in the future.

Trial Ct. Ex. E, O.R. at 256.

[11] Although Employee initially named the Union as a defendant, on March 12, 2021, he filed a stipulation dismissing all of his claims against the Union. *See* R.R. at 38a-39a.

claims for damages and reinstatement against the Township: (1) invasion of privacy in violation of article I, section 8 of the Pennsylvania Constitution[12]; (2) invasion of privacy under Pennsylvania law based on the constitutional claim; and (3) wrongful discharge as a violation of public policy. *See* R.R. at 13a-21a.

On June 25, 2021, the Township filed a Motion for Summary Judgment in which it claimed: (1) the statute commonly referred to as the Political Subdivision Tort Claims Act (Tort Claims Act)[13] bars Employee's claims; (2) Employee's wrongful discharge claim fails because he's a member of the Union; (3) Employee's constitutional claim fails because he had no reasonable expectation of privacy; and (4) Employee's invasion of privacy claim cannot be established as a matter of law.

On November 3, 2021, the parties appeared in the trial court for an on-the-record pretrial conference to discuss, *inter alia*, motions in limine, proposed jury instructions, and identifying principles of law that are in dispute. *See* O.R. at 257. On November 5, 2021, the trial court issued an order directing, *inter alia*, that the Township submit an amended Motion for Summary Judgment. *See id.* at 276-77. As directed, on December 17, 2021, the Township filed its renewed Motion for Summary Judgment claiming: (1) Employee's constitutional invasion of privacy claim fails because there was no search conducted or urine collected or analyzed; (2) Employee cannot recover money damages based on the purported violation of his

---

[12] Pa. Const. art. I, §8. Article I, section 8 states:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

[13] 42 Pa. C.S. §§8541-8542.

11

constitutional rights; (3) the Tort Claims Act bars Employee's state law invasion of privacy and wrongful termination claims; (4) Employee's wrongful discharge claim fails because he is a member of the Union; and (5) Employee's invasion of privacy claim fails as a matter of law. *See id.* at 289-92.

On May 19, 2022, the trial court issued an order granting the Township's renewed Motion for Summary Judgment and entered judgment in the Township's favor and against Employee. Employee then filed the instant timely appeal of the trial court's order.[14]

On appeal, Employee claims: (1) the trial court erred in entering judgment in the Township's favor on Employee's claim that the Township's request that he submit to a test of his urine constituted an illegal search or seizure under article I, section 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution;[15] (2) the trial court erred in entering judgment in the

---

[14] As this Court has explained:

> [W]e will only disturb a trial court's order granting summary judgment where there has been an error of law or a clear abuse of discretion. Summary Judgment is properly granted when, viewing the record in a light most favorable to the nonmoving party, there is no genuine issue of material fact[,] and the moving party is entitled to judgment as a matter of law. All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Metropolitan Edison Company v. Reading Area Water Authority*, 937 A.2d 1173, 1174 n.2 (Pa. Cmwlth. 2007) (citations omitted).

[15] U.S. Const. amend. IV. The Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause,

**(Footnote continued on next page…)**

12

Township's favor on Employee's invasion of privacy claim as barred by the Tort Claims Act; and (3) the trial court erred in entering judgment in the Township's favor on Employee's wrongful discharge claim because it is barred by the Tort Claims Act and the Public Employe Relations Act (PERA).[16]

However, after reviewing the record, Employee's brief and oral argument, and the relevant case law, we conclude that the appellate issues have been ably resolved in the thorough and well-reasoned opinion of the Honorable Robert O. Baldi. Accordingly, we affirm the trial court's order on the basis of his opinion in the matter of *Carr v. Township of Falls* (C.P. Bucks, No. 2019-06230, filed August 16, 2022).

_____

MICHAEL H. WOJCIK, Judge

---

supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

[16] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§1101.101-1101.2301.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael A. Carr,                  :
                                           :
              Appellant     :
                                             :
                v.            : No. 658 C.D. 2022
                                           :
Township of Falls and International    :
Union of Operating Engineers         :
Local 542                             :

# **O R D E R**

AND NOW, this 18th day of December, 2023, the order of the Bucks County Court of Common Pleas dated May 20, 2022, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge

Case# 2019-06230-58 - JUDGE:35 Received at County of Bucks Prothonotary on 08/16/2022 10:14 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Elizabeth Schecter

# IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
## CIVIL ACTION – LAW

| | | |
|---|---|---|
| MICHAEL A. CARR<br>*Plaintiff,* | : | |
| | : | |
| | : | |
| v. | : | No.   2019-06230 |
| | : | |
| TOWNSHIP OF FALLS, *et al*<br>*Defendants.* | : | |
| | : | |

## OPINION

### I.    INTRODUCTION

Michael A. Carr ("Appellant") filed a Notice of Appeal from this Court's Decision and Order, dated May 23, 2022, in which the undersigned granted Summary Judgment in favor of Township of Falls ("Appellee")[1] and against Appellant. This Court's Opinion is being filed as required by Pennsylvania Rule of Appellate Procedure ("Pa.R.A.P.") 1925(a) and in compliance therewith. For the reasons stated below, the undersigned respectfully suggests the instant Appeal should be denied.

### II.    FACTUAL AND PROCEDURAL BACKGROUND

Appellant began his employment with Appellee on January 23, 2008, and continued such employment for over a decade, beginning as a full-time laborer, with promotions to operator class 1, and later to operator class 2. During his employment with Appellee, Appellant was certified with a commercial driver's license and was qualified to operate one or more trucks, motor vehicles, yard equipment, and heavy equipment. On November 20, 2017, Appellant was involved in a minor car accident with another employee while driving a department truck at work. Pursuant to Appellee's policy, Appellant was sent for post-accident drug and alcohol screening.

---

[1] Although the International Union of Operating Engineers Local 452 was initially named as a Defendant, Appellant filed a stipulation voluntarily dismissing all of his claims against said Defendant on March 12, 2021.

On November 27, 2017, Appellee received the results of Appellant's drug and alcohol screening, which indicated Appellant had tested positive for marijuana. Based upon those results, Appellant was suspended for eight days without pay pursuant to Appellee's policies. Appellant was also required to participate in an evaluation by a Substance Abuse Professional ("SAP") and to complete any education, counseling, or treatment prescribed by the SAP prior to returning to work. Appellee also required that the SAP issue a report stating that Appellant had complied with the SAP's recommendations and required that a negative return-to-work drug test be completed at Appellant's expense.

Appellant was notified on November 30, 2017 that after his return to work, he would be subject to testing for drugs and alcohol "at least six times during the next 12 months, and depending on the evaluation of the SAP, could be subject to this testing for a longer period of time." On May 29, 2019, Appellant was handed a sealed envelope and told to report for drug testing at Quest Diagnostics in "connection with his prior positive drug testing from last year." Appellant asked for an explanation as to why said testing was required, and when none was given, took a sick day and left work.

On June 3, 2019, Appellee gave Appellant written notice under *Loudermill* of its intent to terminate his employment and his right to a hearing. Appellant was informed that his refusal to take the drug test on May 29, 2019, violated the SAP's written recommendations, Pennsylvania Department of Transportation regulations, Appellee's Policy 701 and 710, and Article 34 of Appellant's Collective Bargaining Agreement ("CBA") with Appellee. Appellant and his union representatives submitted a written response to the *Loudermill* letter and appeared for the *Loudermill* hearing on June 10, 2019. Appellant was subsequently terminated on June 12, 2019.

Case# 2019-06230-58 - JUDGE:35 Received at County of Bucks Prothonotary on 08/16/2022 10:14 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents."
E-Filed by: Elizabeth Schecter

Appellant filed his Complaint on January 20, 2020, seeking monetary damages and injunctive relief for invasion of his privacy under Article I, § 8 of the Pennsylvania Constitution (Count I), common law invasion of privacy (Count II), and wrongful discharge and violation of public policy (Count III). Appellee filed a Motion for Summary Judgment on June 25, 2021. On November 3, 2021, the parties appeared before the undersigned for an on-the-record Pre-Trial Conference. Appellee renewed its Motion for Summary Judgment on December 17, 2021. As mentioned above, the undersigned granted Appellee's Renewed Motion for Summary Judgment on May 19, 2022, and Appellant filed his Notice of Appeal from that Decision on June 22, 2022.

### III. STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

On July 13, 2022, Appellant filed his Concise Statement of Matters Complained of On Appeal pursuant to Pa.R.A.P. 1925(b), which are set forth *verbatim* below:

1. Did the Court err and/or abuse its discretion when it held Falls Township did not violate plaintiff's right of privacy under Article I, § 8 of the Pennsylvania Constitution, where the evidence supports the May 29, 2019 drug test was not a random test, there was no suspicion or probable cause to test, plaintiff did not refuse the test, and the test violated controlling Township policies governing the follow-up drug test?

2. Did the Court err and/or abuse its discretion when it refused to find plaintiff had an expectation of privacy to be free from the May 29, 2019 drug test under Article I, § 8 of the Pennsylvania Constitution, where the evidence supports the May 29, 2019 drug test was not a random test, there was no suspicion or probable cause to test, plaintiff did not refuse the test, and the test violated controlling Township policies governing the follow-up drug test?

3. Did the Court err and/or abuse its discretion when it refused to find plaintiff had raised genuine issues of material fact as to necessary elements of his Article I, § 8 claims, under no. 1 above, sufficient to require the issues to be submitted to a jury under Rule 1035.2?

4. Did the Court err and/or abuse its discretion when it refused to find plaintiff had raised genuine issues of material fact as to necessary elements of his Article I, § 8 claims, under no. 2 above, sufficient to require the issues to be submitted to a jury under Rule 1035.2?

Case# 2019-06230-58 - JUDGE:35 Received at County of Bucks Prothonotary on 08/16/2022 10:14 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Elizabeth Schecter

Case# 2019-06230-58 - JUDGE:35 Received at County of Bucks Prothonotary on 08/16/2022 10:14 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Elizabeth Schecter

5. Did the Court err and/or abuse its discretion when it refused to find plaintiff had cited evidence in the record under no. 1 above, controverting the evidence cited in support of Fall Township's motion, under Rule 1035.2?

6. Did the Court err and/or abuse its discretion when it refused to find plaintiff had cited evidence in the record under no. 2 above, controverting the evidence cited in support of Fall Township's motion, under Rule 1035.3?

7. Did the Court err and/or abuse its discretion under its order and decision docketed May 23, 2022 dismissing Count I where, on the fulsome record, there is no controlling law in this Commonwealth from which the trier of fact could find plaintiff has not made out a justiciable claim against Falls Township?

8. Did the Court err and/or abuse its discretion under its order and decision docketed May 23, 2022 dismissing Count I, where Falls Township failed to cite (and the Court has failed to find) any dispositive fact in the record not grounded on oral testimony which precludes summary judgment under *Nanty-Glo v. American Surety Co*, 309 Pa. 236 (1932), under Rule 1035.2?

9. Did the Court err and/or abuse its discretion when it refused to find plaintiff's invasion of privacy claim (nos. 1 and 2 above) bottomed upon plaintiff's rights under Article I, § 8 excepts plaintiff's claim against Falls Township from the Political Subdivision Tort Claims Act [PSTCA]?

10. Did the Court err and/or abuse its discretion when held, under an alternate rationale, plaintiff's invasion of privacy claim as a common law claim, is "deficient as a matter of law" because plaintiff did not suffer an "invasion", plaintiff never complied with the request . . . to submit to a drug test on May 29, 2019[,] and no private information was ever obtained or disclosed?"

11. Did the Court err and/or abuse its discretion under this alternate rationale, when it refused to find plaintiff had cited evidence in the record under no. 9 above, controverting the evidence cited in support of Fall's Township's motion, under Rule 1035.3?

12. Did the Court err and/or abuse its discretion under this alternate rationale, when it refused to find plaintiff had cited evidence in the record under no. 10 above, controverting evidence cited in support of Falls Township's motion, under Rule 1035.3?

13. Did the Court err and/or abuse its discretion under its order and decision docketed May 23, 2022 dismissing Count II where, on the fulsome record, there is no controlling law in this Commonwealth from which the trier of fact could find plaintiff has not made out a justiciable claim against Falls Township?

Case# 2019-06230-58 - JUDGE:35 Received at County of Bucks Prothonotary on 08/16/2022 10:14 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. · E-Filed by: Elizabeth Schecter

14. Did the Court err and/or abuse its discretion when it held (and/or intimated a holding) plaintiff's wrongful discharge claim bottomed upon Article I, § 8 of the Pennsylvania Constitution, is barred under his participation in a PERA-based collective bargaining agreement (CBA)?

15. Did the Court err and/or abuse its discretion when it held (and/or intimated a holding) plaintiff's wrongful discharge claim bottomed upon Article I, § 8 of the Pennsylvania Constitution, is barred under Political Subdivisions Tort Claims Act [PSTCA]?

16. Did the Court err and/or abuse its discretion when it refused to find plaintiff had cited evidence in the record under no. 14 above, controverting evidence cited in support of Falls Township's motion, under Rule 1035.3?

17. Did the Court err and/or abuse its discretion when it refused to find plaintiff had cited evidence in the record under no. 15 above, controverting evidence cited in support of Falls Township's motion, under Rule 1035.3?

18. Did the Court err and/or abuse its discretion under its order and decision docketed May 23, 2022 dismissing Count III where, on the fulsome record, there is no controlling law in this Commonwealth from which the trier of fact could find plaintiff has not made out a justiciable claim against Falls Township?

19. Did the Court err and/or abuse its discretion when it refused to hold plaintiff's wrongful discharge claim bottomed upon Article I, § 8 of the Pennsylvania Constitution articulated under nos. 1 and 2 above, was *prima facie* unlawful under controlling law to give rise to a violation of a clear public policy allowing plaintiff redress?

20. Did the Court err and/or abuse its discretion when it refused to find plaintiff had cited evidence in the record under no. 19 above, controverting the evidence cited it support of Falls Township's motion, under Rule 1035.3?

21. Did the Court err and/or abuse its discretion under its order and decision docketed May 23, 2022 where the fulsome record demonstrates no evidence under Rule 1035.2 upon which the trier of fact could find Count III fails to state a justiciable claim for a violation of a clear public policy allowing plaintiff redress?

22. Did the Court err and/or abuse its discretion under its order and decision docketed May 23, 2022 dismissing Count I, II and III where Falls Township's own record presents genuine issues of material fact under Rules 1035.2 controverting the facts proffered in defense of plaintiff's claims.

Case# 2019-06230-58 - JUDGE:35 Received at County of Bucks Prothonotary on 08/16/2022 10:14 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. . E-Filed by: Elizabeth Schecter

## IV.   DISCUSSION

For ease of discussion, this Court will consolidate and address Appellant's arguments that this Court erred in dismissing Appellant's claims under Article I, § 8 of the Pennsylvania Constitution first, followed by the application of the Pennsylvania Political Subdivisions Tort Claims Act ("PSTCA"), 42 P.S. § 8501 *et seq.* and Pennsylvania Public Employee Relations Act ("PERA"), 43 P.S. § 1101.101 *et seq.* to Appellant's common law claims.

### A.  Standard of Review

Pennsylvania law provides that summary judgment may be granted only in those cases in which the record clearly shows that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. McDonald v. Whitewater Challenge, 116 A.3d 99, 104-05 (Pa. Super. 2013) (Charlie v. Erie Ins. Exchange, 100 A.2d 244, 250 (Pa. Super. 2014)). The moving party has the burden of proving that no genuine issues of material fact exist. Id.

In determining whether to grant summary judgment, the trial court must view the record in the light most favorable to the nonmoving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Id. Thus, summary judgment is proper only when the uncontroverted allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. Id. Only when the facts are so clear that reasonable minds cannot differ, may a trial court properly enter summary judgment. Id.

On appeal from a grant of summary judgment, appellate courts examine the record in the light most favorable to the nonmoving party. Phillips v. Lock, 86 A.3d 906, 912 (Pa. Super. 2014) (citing Hogg Constr., Inc. v. Yorktowne Med. Ctr., L.P., 78 A.3d 1152, 1154 (Pa. Super. 2013)).

6

Case# 2019-06230-58 - JUDGE:35 Received at County of Bucks Prothonotary on 08/16/2022 10:14 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Elizabeth Schecter

With regard to questions of law, an appellate court's scope of review is plenary. Id. However, appellate courts will reverse a trial court's grant of summary judgment only upon a showing of clear error of law or abuse of discretion. Id. "An abuse of discretion requires proof of more than a mere error in judgment, but rather evidence that the law was misapplied or overridden, or that the judgment was manifestly unreasonable or based on bias, ill will, prejudice, or partiality." Simmons v. Simmons, 723 A.2d 221, 222 (Pa. Super. 1998).

B. Application of Article I, § 8 of the Pennsylvania Constitution

Article I, § 8 of the Pennsylvania Constitution provides:

> [t]he people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oat or affirmation subscribed to by the affiant.

In Skinner v. Ry. Labor Executives' Ass'n, 489 U.S. 602, 633 (1989), the United States Supreme Court upheld a regulatory scheme providing for suspicionless urinalysis of railroad employees following significant train accidents or certain instances of employee misconduct. Although urinalysis is considered a search for the purposes of the Fourth Amendment of the United States Constitution, the United States Supreme Court reasoned that railroad employees' privacy interests are outweighed by the government's interest in protecting the public's safety, and that suspicionless urinalysis was not an unreasonable search in that context. Id. at 626-27, 633.

The Pennsylvania Commonwealth Court has explicitly stated that, "provisions of our state Constitution [sometimes] provide individuals with greater protections than those they would receive under similar provisions of the Federal Constitution [and] Article I, Section 8, has been found in particular cases to embody a strong notion of privacy, which is greater than that of the Fourth Amendment." Jones v. City of Philadelphia, 890 A.2d 1188, 1198 (Pa. Commw. 2006)

Case# 2019-06230-58 - JUDGE:35 Received at County of Bucks Prothonotary on 08/16/2022 10:14 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.,
E-Filed by: Elizabeth Schecter

(citations omitted). However, "the right to privacy under Pennsylvania law, although extensive, is not unlimited" and "the constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all the surrounding circumstances." Commonwealth v. Crouse, 729 A.2d 588, 595 (Pa. Super. 1999).

The Pennsylvania Supreme Court has stated that "this [right to privacy] alone 'does not command a reflexive finding in favor of any new right or interpretation asserted.'" Commonwealth v. Smith, 836 A.2d 5, 15 (Pa. 2003) (quoting Commonwealth v. Cleckley, 738 A.2d 427, 431 (Pa. 1999)). The Court further emphasized that "we have not hesitated to follow the prevailing Fourth Amendment standard in appropriate instances." Smith, 836 A.2d at 15 (citing Cleckley, 738 A.2d at 431-32). In other words, the Pennsylvania Supreme Court has instructed that "[courts] are to construe the Pennsylvania Constitution as providing greater rights to its citizens than the federal constitution 'only where there is a compelling reason to do so.'" Crouse, 729 A.2d at 596 (quoting Commonwealth v. Gray, 503 A.2d 921, 926 (Pa. 1985)).

As the United States Supreme Court held in Skinner, a government employer's collection and testing of urine similarly constitutes a "search" for purposes of Article 1, § 8 of the Pennsylvania Constitution. Metz v. Bethlehem Area Sch. Dist., 177 A.3d 384, 392 (Pa. Commw. 2018). This rule applies equally to "government employers who have a paramount interest in assuring that employees in safety-sensitive jobs are free from the effects of drugs while performing their duties and whose employees have a lower expectation of privacy with regard to intoxication." Id. Thus, public employers generally must demonstrate reasonable suspicion to test the urine of their employees. Id. at 392. However, a party may waive constitutional rights designed for his

benefit. <u>Tyler v. King</u>, 496 A.2d 16, 24 (Pa. Super. 1985) (citing <u>Kardibin v. Associated Hardware</u>, 426 A.2d 649, 656-57 (Pa. Super. 1981)).

Here, Appellant contends that Appellee violated his Constitutional Right to privacy – specifically Article I, § 8 of the Pennsylvania Constitution – when Appellee requested that Appellant submit to a drug test on May 29, 2019. However, Appellant's argument fails for several reasons. First, and most explicitly, Appellee's CBA, which is discussed in more detail in Section IV(D) below, provided for random drug testing. Appellant admitted that he was aware of this policy.[2] Thus, Appellant consented to random drug testing during the scope of his employment with Appellee and Appellee's reasons for testing Appellant and the timing thereof are irrelevant as Appellee could have requested a random drug test from Appellant at any time.

Moreover, Appellant concedes that he failed to cite any authority for the proposition that public employers' policies providing for suspicionless urinalysis of government employees in safety-sensitive roles violates Article I, § 8 of the Pennsylvania Constitution. Notes of Testimony ("N.T.") Nov. 3, 2021 at 28:8-25 – 29:1-7. The <u>Metz</u> case is distinguishable from the instant case because there was no random drug testing provision in the public-school teachers' collective bargaining agreement. Moreover, the Pennsylvania Commonwealth Court applied the United States Supreme Court's reasoning in <u>Skinner</u> and found that reasonable suspicion is all that is required to urine test public employees in safety sensitive roles, including the operation of heavy machinery. <u>Metz</u>, 177 A.3d at 392.

---

[2] Under the <u>Nanty-Glo</u> rule, the party moving for summary judgment may not rely upon its own testimony or affidavits, or those of its witnesses, to establish the nonexistence of genuine issues of material fact, since the credibility of those submissions is reserved for the fact-finder. <u>HSBC Bank, N.A., v. Donaghy</u>, 101 A.3d 129, 134 n.10 (Pa. Super. 2014). However, <u>Nanty-Glo</u> "does not preclude the grant of summary judgment when the moving party relies on the testimonial evidence of an adverse party." <u>Id</u>. Here, Appellant admitted that he and other employees were subject to random drug testing under the CBA and that he never submitted to the drug test that he was ordered to take on May 29, 2019. Carr Deposition Testimony ("D.T.") Jan. 29, 2021 at 27:17-24 – 28:1-3; 33:11-20; 56:17-24 – 59:1; 130:13-20. Thus, Appellant's argument that the Court erred in considering Appellant's own testimony against him with respect to Count I is unavailing.

9

Case# 2019-06230-58 - JUDGE:35 Received at County of Bucks Prothonotary on 08/16/2022 10:14 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. .
E-Filed by: Elizabeth Schecter

Pursuant to Crouse, Appellant entirely failed to articulate a compelling reason for the Court to construe the Pennsylvania Constitution as affording greater rights to its citizens than the rights provided by the Fourth Amendment of the United States Constitution with respect to public employers' random drug testing policies for public employees in safety sensitive roles.[3] N.T. Nov. 3, 2021 at 28:8-25, 29:1-7; Skinner, 489 U.S. at 626-27; Crouse, 729 A.2d at 596.

Moreover, in the case at bar, there was no search or seizure for the purposes of the Fourth Amendment of the United States Constitution or Article I, § 8 of the Pennsylvania Constitution because Appellee never collected or analyzed Appellant's urine on May 29, 2019, or at any time prior to Appellant's termination on June 12, 2019. Carr D.T. Jan. 29, 2021 at 56:17-19. Thus, it is respectfully submitted that the undersigned properly granted Appellee's Renewed Motion for Summary Judgment as to Count I of Appellant's Complaint.

C. Application of the PSTCA to Appellant's Common Law Invasion of Privacy Claim

Count II of Appellant's Complaint fails as a matter of law because the PSTCA provides Appellee with immunity from tort claims apart from a few exceptions which are enumerated in the statute. See 42 P.S. § 8501 et seq. The PSTCA states that "[e]xcept as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by an act of the local agency or an employee thereof or any other person." 42 Pa.C.S.A. § 8541. This section goes beyond merely clothing local governments with an immunity defense subject to waiver. City of Philadelphia v. Middleton, 492 A.2d 763, 766 (Pa. Commw.

---

[3] Appellant argues that with respect to each of the Counts in his Complaint, "there is no controlling law in this Commonwealth from which the trier of fact could find plaintiff has not made out a justiciable claim" against Falls Township. As an initial matter, whether there is legal precedent on point is a question of law and not one of fact. Additionally, in reviewing a motion for summary judgment, the court is not required to let claims go forward for which there is no legal support. See Rock v. Meakem, 61 A.3d 239, 255, 263 (Pa. Super. 2013) (finding summary judgment was properly entered on claims for which plaintiff failed to cite any legal authority). Thus, it is respectfully submitted that the Court properly granted Appellee's Renewed Motion for Summary Judgment as Appellant failed to articulate sufficient legal support for his claims.

Case# 2019-06230-58 - JUDGE:35 Received at County of Bucks Prothonotary on 08/16/2022 10:14 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.; E-Filed by: Elizabeth Schecter

1985). It plainly forbids any damage recoveries against political subdivisions outside the parameters of the exceptions enumerated in Section 8542 of the Code. Id. Because of the legislature's clear intent to insulate local governments from exposure to tort liability, the exceptions to immunity are to be strictly construed. Lockwood v. City of Pittsburgh, 751 A.2d 1136, 1139 (Pa. 2000). Common law invasion of privacy claims are not included among the enumerated exceptions to Appellee's immunity under the PSTCA, and thus, Appellant is barred from pursuing Count II as a matter of law.

Even if Appellant's common law invasion of privacy claim fell into one of the enumerated exceptions to the PSTCA, Count II fails as a matter of law. To state a claim for an invasion of privacy at common law, "plaintiffs must aver that there was an intentional intrusion on the seclusion of the plaintiff's private concerns which was substantial and highly offensive to a reasonable person and sufficient facts to establish that the information disclosed would have caused mental suffering, shame or humiliation to a person of ordinary sensibilities." Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co., 809 A.2d 243, 247 (Pa. 2002).

Here, Appellant does not allege nor suggest that Appellee's purported invasion of his privacy subjected him to personal embarrassment, humiliation, or public scorn because his private information was disclosed improperly. The only "invasion" if any, was based on Appellee's written request that Appellant take a drug test on May 29, 2019. Appellant alleges that Appellee's request was made publicly, as Appellant's supervisor handed him an envelope in the lunchroom in front of other employees. N.T. Nov. 3, 2021 at 76:10-14. However, per the Falls Township Drug and Alcohol Testing Policy, all of Appellee's employees who operate heavy or dangerous equipment are subject to random drug testing, and Appellee's request that Appellant take a drug test, even if made publicly, does not constitute an embarrassing or private fact. Carr D.T. Jan. 29,

11

2021 at 129:7-24 – 130:1-20. Additionally, Appellant never complied with Appellee's request and no private information regarding Appellant was ever obtained or disclosed. Carr D.T. Jan. 29, 2021 at 27:17-24 – 28:1-3; 56:17-24 – 59:1. Therefore, Count II is deficient as a matter of law, and it is respectfully submitted that this Court properly granted Appellee's Renewed Motion for Summary Judgment as to that Count.

D. Application of the PERA and the PSTCA to Appellant's Wrongful Discharge Claim

PERA establishes public employees' rights to organize, to collectively bargain through selected representatives, and to adopt collective bargaining agreements governing employee conduct. 43 P.S. § 1101.101 *et seq.* Pennsylvania case law bars Appellant from bringing a wrongful termination claim by nature of Appellant's participation in the CBA, which is authorized by PERA. Cairns v. Southeastern Pennsylvania Transportation Authority, 538 A.2d 659, 660-61 (Pa. Commw. 1988) ("because the wrongful discharge action in Pennsylvania was judicially created to protect otherwise unprotected employees from indiscriminate discharge and to provide unorganized workers a legal redress against improper actions by their employers . . . wrongful discharge [claims are] available only when the employment relationship is at will.")

Moreover, wrongful discharge is a tort claim, which like common law invasion of privacy, is not included in the enumerated exceptions to immunity granted to townships by the PSTCA. McNichols v. Department of Transportation, 804 A.2d 1264, 1267 (Pa. Commw. 2002); See 42 Pa.C.S.A. § 8542(b)(1-9). Therefore, Appellant's wrongful discharge claim is barred as a matter of Pennsylvania law.

Even if Appellant's claim were not barred by Appellant's participation in the CBA and Appellee's immunity under the PSTCA, Appellant has not articulated a basis for finding that he was wrongfully terminated under Pennsylvania law. The Pennsylvania Supreme Court has noted

Case# 2019-06230-58 - JUDGE:35 Received at County of Bucks Prothonotary on 08/16/2022 10:14 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Elizabeth Schecter

that "[a]n employee will be entitled to bring a cause of action for a termination of that relationship only in the most limited circumstances where the termination implicates a clear mandate of public policy in this Commonwealth." McLaughlin v. Gastrointestinal Specialists, Inc., 750 A.2d 283, 314 (Pa. 2000).

As a general rule, public policy is to be determined by laws and legal precedents and not from the supposed public interest. Id. at 315-16 (citations omitted). In determining whether a public policy exists and whether it has been violated by an employer's conduct, courts are instructed to "examin[e] the precedent within Pennsylvania, looking to the [Pennsylvania] Constitution, court decisions and statutes promulgated by [the Pennsylvania] legislature." Id. "While [courts are] . . . free to find that a particular practice violates an existing public policy, [courts are] relatively confined in [their] ability to announce new public policy." Donahue v. Federal Express Corp., 753 A.2d 238, 244 (Pa. Super. 2000) (citing Shick v. Shirey, 716 A.2d 1231, 1237 (Pa. 1998)).

Despite numerous invitations from the Court, Appellant failed to articulate specific public policies that were violated by Appellee's testing requirements. N.T. Nov. 3, 2021 at 36:7-25 – 48:1-21; 51:19-25 – 53:1-11. In light of the lack of federal and state precedent on point, and Appellant's inability to describe the particular public policy implicated by Appellee's conduct, it is respectfully submitted that the Court properly declined to announce and apply a new public policy to Appellant's claims. Therefore, Appellant's third and final claim against Appellee is insufficient as a matter of law, and it is respectfully submitted that the Court properly granted Appellee's Renewed Motion for Summary Judgment with respect to same.

13

Case# 2019-06230-58 - JUDGE:35 Received at County of Bucks Prothonotary on 08/16/2022 10:14 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Elizabeth Schecter

## V.   CONCLUSION

Accordingly, it is respectfully submitted that that this Court's Decision and Order entered on May 23, 2022 addressed each of the issues raised in this Appeal and that the Court did not err in in its findings.   Thus, it is respectfully suggested that the undersigned properly granted Appellee's Renewed Motion for Summary Judgment as to each of Appellant's claims and the instant Appeal should be denied.

BY THE COURT:

8/16/22

_____

DATE

_____

ROBERT O. BALDI, J.

14